GEORGE H. WHEARY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 4799. Promulgated December 16, 1926.

*Virgil Y. Moore, Esq., Andrew T. Smith, Esq.,* and *John B. Simmons, Esq.,* for the petitioner.

*B. Toole, Esq.,* for the respondent.

LITTLETON: The Commissioner determined a deficiency of $12,021.54 for the calendar year 1922. In 1922 the petitioner exchanged

certain patents for $100,000 par value of the capital stock of the Wheary-Burge Trunk Co. The Commissioner held that the patents had a value on March 1, 1913, of $15,000 and that the stock received had a readily realizable market value equal to the par value thereof, and determined a taxable gain of $85,000. Petitioner claims that the stock received in exchange had no readily realizable market value at the time.

FINDINGS OF FACT.

Petitioner is a resident of Racine, Wis. For more than thirty years he has been continuously engaged in the business of manufacturing trunks. About twenty-four years ago he was employed by the Hartman Trunk Co., of Racine, as an expert trunk maker. Shortly thereafter he was placed in charge of the manufacture of trunks which he had designed. During the period from 1903 to 1922 petitioner was granted 130 United States patents covering both open and wardrobe trunks and various features thereof. He was the originator of the wardrobe trunk in use generally at the present time. Up to 1912 he assigned all patents obtained by him unconditionally to the Hartman Trunk Co. In that year an agreement was entered into between Wheary and the Hartman Trunk Co. whereby the latter gave Wheary a right to manufacture and sell trunks covered by patents theretofore assigned by him to it. The agreement further provided that the Hartman Trunk Co. should have the right to purchase a shop right under subsequent patents granted Wheary. At the time when the Wheary-Burge Trunk Co. was organized in 1922, as hereinafter mentioned, the Hartman Trunk Co. exercised its right under the agreement and purchased a shop right in Wheary's patents, so that at the date of organization of the Wheary-Burge Trunk Co. the Hartman Trunk Co. possessed a right to manufacture and sell trunks under all of Wheary's patents granted up to that time.

During the period of Wheary's experience, and particularly during his connection with the Hartman Trunk Co., he became personally acquainted with and well known to persons engaged in dealing with trunks, as well as those engaged in the manufacture and sale of trunk hardware. A number of Wheary's close friends in these lines urged him to sever his connection with the Hartman Trunk Co., organize a company of his own, and engage in the manufacture and sale of trunks. They believed that by reason of his knowledge and experience in the manufacture and sale of trunks he could successfully compete with other trunk manufacturers. He hesitated for some time but finally, about September 1, 1922, after conferring with his friends, F. J. Greene, Milton Luce, Harry Burge, M. E. Walker,

George F. Grube, and Fred McFawn, who indicated that they would invest in a corporation to be operated and managed by Wheary, he withdrew from the Hartman Trunk Co. and proceeded forthwith to organize the Wheary-Burge Trunk Co. to engage in the manufacture and sale of trunks. His contract with the Hartman Trunk Co. expired on September 3, 1922.

F. J. Greene owned the Greene Manufacturing Co., engaged in the manufacture of trunk hardware, and he contemplated selling his product to the new trunk company. Upon organization he subscribed for $50,000 par value of stock. Milton Luce owned and operated a chain of retail trunk stores and he contemplated selling the company product. Upon organization he subscribed for $30,000 par value of stock. Harry Burge was the western representative of the Hartman Trunk Co., west of Denver. He severed his connection with the Hartman Trunk Co. at the same time as Wheary, it being a part of the plan that he should become vice president of the Wheary-Burge Trunk Co., that Wheary should have full charge of the manufacture, and that Burge should have charge of sales. Burge was to receive a salary of $500 a month during the remainder of 1922 and $10,000 for 1923. Upon organization Burge subscribed for $50,000 par value of stock. M. E. Walker had been Wheary's personal attorney for fifteen years. He organized the corporation and became its attorney. He subscribed for $20,000 par value of stock. George F. Grube had formerly been connected with the Hartman Trunk Co., but some time prior to 1918 had withdrawn and organized a company of his own and later sold his business in 1918. Upon organization he subscribed for $50,000 par value of stock and became active in the affairs of the corporation as treasurer. His salary was $500 a month during the remainder of 1922 and $10,000 for 1923. Fred McFawn was engaged in the manufacture and sale of trunk hardware and parts at New London, Conn. He subscribed for $15,000 par value of stock with the expectation of selling hardware and trunk supplies to the company. He paid for only $7,500 par value of stock for which he had subscribed.

Wheary's association with all of these men had been very close for a period of twenty years. They had strong faith in his ability successfully to operate and manage the company and in his inventive ability, and it was due entirely to this fact and the fact that Wheary agreed to take charge of the business that they were willing to invest in the new enterprise. The whole organization was built around Wheary. The subscribers for its stock were investing in the business and inventive ability of Wheary. Wheary agreed to devote his entire time, energy, and inventive ability to the company and to work exclusively for its best interests.

Upon organization in September, 1922, Wheary transferred to the corporation all his right, title and interest in and to all of the patents which had theretofore been granted to him, and agreed to assign to the corporation any further patents which might be granted to him during such time as he might remain with the corporation, for which the corporation issued to him $100,000 par value of its stock. At the time the stock was issued the company possessed in the way of a plant only a lease of three upper floors of a building in Racine. It had no other property or equipment for manufacturing purposes. It had no established trade. The investments in the corporation by the individuals mentioned were purely speculative. No attempt was made to sell the company's stock to the public generally. Efforts were made at the time of organization to induce certain wealthy business men in Racine, not connected in any way with the trunk business, to invest in the corporation, and although they knew Wheary and had confidence in his ability they declined to invest any amount in the stock of the corporation for the reason that they considered the investment entirely too speculative and for the reason that, if Wheary should die or withdraw from the corporation, they would in all probability lose their investment. They felt also, that the competition which the company would have to meet and overcome was such that the purchase of its stock was not, for this reason, a good investment.

The Wheary-Burge Trunk Co. began manufacturing operations in the latter part of December, 1922. No dividends have ever been paid by the corporation upon its stock.

Soon after the company began operations, McFawn, not having received the amount of business he had expected from the new company, began to make an effort to sell his stock. He endeavored for a year to do so without finding a purchaser at any price. Finally Greene, from whom the new company had purchased practically all of its hardware and supplies, took over McFawn's stock at less than par in payment of a portion of McFawn's indebtedness to him. Soon after incorporation Burge became ill and endeavored to sell his stock but could find no purchaser. His illness was partially due to worry over his investment in the corporation and the fact that he might lose it. Finally, Wheary, Luce, Greene, and Grube, at whose suggestion Burge had subscribed for the stock, feeling that if they should take over Burge's stock this would aid his recovery, gave Burge their promissory notes totaling the amount which Burge had paid for the stock and had the same transferred in their names upon the books of the company.

The Commissioner held that the patents transferred to the corporation had a value on March 1, 1913, of $15,000 and that the 1,000

shares of stock, par value of $100 a share, received by Wheary in 1922 in exchange therefor had a readily realizable market value at the time of exchange within the meaning of section 202 (c) of the Revenue Act of 1921 of $100,000, determined a taxable gain to Wheary of $85,000, and computed a deficiency of $12,021.54.

The 1,000 shares of capital stock of the Wheary-Burge Trunk Co. received by Wheary in exchange for his patents had no readily realizable market value at the date of exchange.

*Judgment will be entered for the petitioner upon the issue raised on 15 days' notice, under Rule 50.*